UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROSE ACCEPTANCE,

        Plaintiff,

v.                                          Case Number 11-14736
                                          Honorable Thomas L. Ludington
ALPENA COLLISION et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Sovereign immunity, as originally understood, was founded "upon a medieval English theory that 'the King can do no wrong.'" Edwin M. Borchard, *Government Liability in Tort*, 34 Yale L.J. 1, 2 (1924). As one commentator explained in the 1780s, "The King cannot be sued by Writ, for he cannot command himself." John Comyns, *A Digest of the Laws of England* 457 (1785), *quoted in* Guy I. Seidman, *The Origins of Accountability: Everything I Know About the Sovereign's Immunity, I Learned from King Henry III*, 49 St. Louis U. L.J. 393, 435 (2005). About a hundred years later and a continent away, the United States Supreme Court explained that the principle is not limited to the king: "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and the general practice of mankind." *Hans v. Louisiana*, 134 U.S. 1, 13 (1890).

In this land contract dispute, the vendor, Plaintiff Rose Acceptance, seeks a forfeiture of property from its vendee, Defendant Alpena Collision, since the vendee has been in default on the contract for nearly two years. The United States has recorded tax liens against Alpena

Collision's interest in the property. The principal question is whether the United States has waived its sovereign immunity from suit for land contract forfeiture actions, or whether Plaintiff must instead proceed by foreclosure.

Section 2410 of Title 28 enumerates five specific causes of action to which the United States consents to being named a defendant in an action affecting property on which it has a lien. 28 U.S.C. § 2410(a). A forfeiture of a land contract action is not among them. A foreclosure action is. The Supreme Court cautions: "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation omitted) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)). Because the United States has not consented to suit for land contract forfeiture actions, Plaintiff's only available remedy is foreclosure. Accordingly, Plaintiff's motion for summary judgment will be granted in part and denied in part, the United States' motion for summary judgment will be granted, and a foreclosure sale will be ordered.

**I**

Plaintiff is a Michigan corporation located in East Lansing, Michigan. *See* Land Contract, *attached as* Alpena Collision's Resp. to Pl.'s Mot. for Summ. J. Ex. C, ECF No. 17-1. Alpena Collision is a Michigan corporation located in Alpena, Michigan. *Id.* Alpena Collision's president is Melburne Lemieux, Jr. *Id.*

**A**

From 2001 through 2010, Alpena Collision did not fully pay its federal taxes. *Compare* IRS's Mot. for Summ. J. Ex. 1, ECF No. 23 (enumerating 40 consecutive quarters of unpaid taxes), *with* Alpena Collision's Resp. Br. 2 (contending that taxes were paid during eight of those 40 quarters), ECF No. 26.

Specifically, the United States contends that during these 40 quarters Alpena Collision did not "fully pay its quarterly Form 941 taxes (Federal Insurance Contributions Act, Medicare, and income taxes withheld from the wages of its employees), Form 940 taxes (Federal Unemployment Tax Act), and Form 1120 taxes (corporate income taxes)." IRS Br. Supp. Mot. for Summ. J. 10–11 ("IRS Mot. Br."). With accumulated interest, the United States contends that as of October 2012 Alpena Collision owes the IRS $169,807.29. *Id.* at 11.

Alpena Collision disputes this (in part), contending that it fully paid its taxes two quarters in 2006, three quarters in 2008, and three quarters in 2009. *See* Alpena Collision's Resp. Br. 2. And, while Alpena Collision acknowledges that it is indebted to the United States, it disputes the amount of the debt (without quantifying precisely how much it owes). *See id.*

**B**

The United States initially responded to Alpena Collision's underpayments by issuing deficiency notices. *See* Alpena Collision's Answer to United States Countercl. ¶ 4, ECF No. 13 (acknowledging that deficiency notices were received). Later, the United States recorded at least 10 separate tax liens with the Alpena County Register of Deeds. *See* Pl.'s Mot. for Summ. J. Ex. C (attaching summary of tax liens), ECF No. 15.

More particularly, the United States recorded four tax liens against Alpena Collision in 2006 (recorded in the Alpena County land records at liber 454, page 231; liber 453, page 232; liber 453, page 724; and liber 454, page 384). *Id.* The next year, the United States recorded two more tax liens (at liber 457, page 129; and liber 474, page 778). *Id.* In 2010, another two (at liber 475, page 704; and liber 476, page 918). *Id.* And two more in 2011 (at liber 481, page 77; liber 482, page 975). *Id.*

Alpena Collision acknowledges that the United States has recorded these liens. *See* Alpena Collision's Resp. Br. 2. But, Alpena Collision counters, on March 2, 2011 it paid $12,463.93 to release a lien recorded in the Alpena County land records at liber 447, page 258. *Id*. Ex A. (This particular lien, however, is not one of the 10 specifically identified in the United States' papers.)

### C

In September 2010, Alpena Collision entered into a land contract with Plaintiff. *See* Land Contract preamble ("This Contract, made this 16th day of September, 2010 between Rose Acceptance, Inc., a Michigan Corporation, hereinafter referred to as the "SELLER," whose address is 241 Saginaw, East Lansing, MI 48823 and Alpena Collision Service, Inc., a Michigan Corporation, hereinafter referred to as the "PURCHASER," whose address is 249 N. Ripley, Alpena, MI 49707."), *attached as* Alpena Collision's Resp. to Pl.'s Mot. for Summ. J. Ex. C.

Under the contract, Plaintiff agrees to convey two parcels of land in Alpena, Michigan to Alpena Collision in exchange for $150,000, plus interest and "other amounts financed." Land Contract ¶ (1)(b). (The parcels are commonly known as 249 N. Ripley and 111 Elizabeth. *See id*.)

The interest rate on the land contract is 12.75 percent. *Id*. The "other amounts financed," which total $3,604.48, include a title search fee ($125), recording fee ($99), and an escrow deposit ($3,380.48). Browning Aff. ¶ 2, *attached as* Pl.'s Reply Ex. 1.

The contract has a 60-month term with a balloon payment. Land Contract ¶ (1)(b). Fifty-nine monthly payments of $1,547.33 are followed by a single balloon payment of $124,253.06. *Id*. Additionally, to pay the taxes and assessments on the property, each month Alpena Collision

-4-

is required to pay Plaintiff $601.07. Land Contract ¶ (2)(e). Plaintiff, in turn, deposits the $601.07 in a non-interest bearing escrow account, refunding any overpayments. *Id.*

If Alpena Collision breaches any of its obligations, the land contract provides, Plaintiff may either declare the property forfeit or initiate foreclosure proceedings. *Id.* ¶ (3)(f)–(g). The contract specifies:

> If the purchaser shall fail to perform this contract or any part thereof, the Seller immediately after such default shall have the right to declare the same forfeited and void, and retain whatever may have been paid hereon, and all improvements that may have been made upon the premises, together with additions and accretions thereto, and consider and treat the Purchaser as his tenant holding over without permission and may take immediate possession of the premises, and the Purchaser and each and every other occupant remove and pull out. In all cases where a notice of forfeiture is relied upon by the Seller to terminate right hereunder, such notice shall specify all unpaid moneys and other breaches of this contract and shall declare forfeiture of this contract effective fifteen days after service unless such money is paid and any other breaches of this contract are cured within that time.
>
> If default is made by the Purchaser and such default continues for a period of forty-five days or more, and the Seller desires to foreclose this contract in equity, then the Seller shall have at his option the right to declare the entire unpaid balance hereunder to be due and payable forthwith, notwithstanding anything herein contained to the contrary.

*Id.* Additionally, an attorney fee provision provides: "The Purchaser agrees to pay all costs and fees incurred by the Bank to protect the Bank's interest, including but not limited to actual attorney fees and all costs of litigation concerning this contract." *Id.* ¶ (3)(m). The land contract does not identify who "the Bank" is (Plaintiff, as noted, is defined in the land contract as "the Seller" — not "the Bank").[1]

---

[1] The attorney fee provision is not the only curious clause in the land contract, which suggests that Plaintiff was simply using a form contract. To take just one more example, paragraph (3)(h) provides: "The wife of the Seller, for a valuable consideration, joins herein and agrees to join the execution of the Deed to be made in fulfillment hereof. Land Contract ¶ (3)(h). The Seller, as noted, is Plaintiff — a Michigan corporation. Corporations, however, lack the legal capacity to marry.

The land contract also contains a merger clause, which provides: "This agreement contains the entire agreement between the Purchaser and Seller, and it cannot be modified except in a writing executed by both parties. *Id*. ¶ (3)(p).

On September 16, Alpena Collision made a down payment to Plaintiff of $21,000, leaving a balance of $132,604.48. Land Contract ¶ (1)(b). As additional security, Alpena Collision executed a mortgage in favor of Plaintiff to 320 acres of property in Oscoda, Michigan. *See* Pl.'s Mot. Ex. E (attaching copy of mortgage).

**D**

After executing the contract in September 2010, Alpena Collision began performing its obligations. The following January, it sought a modification. *See* Alpena Collision's Answers to Pl.'s Requests for Admissions ¶ 3, *attached as* Pl.'s Mot. Ex. I. In exchange for $90,300, Plaintiff agreed to reduce Alpena Collision's monthly payments from $1,547.33 to $723. *See* Alpena Collision's Resp. to Pl.'s Mot. Ex. B. (It is not obvious that this payment would affect the amount due each month for the escrowed tax and assessment payments, $601.07.) Additionally, Plaintiff agreed to partially release the mortgage on the property in Oscoda, Michigan. Alpena Collision's Answers to Pl.'s Requests for Admissions ¶ 3. In February 2011, Alpena Collision wired the money to Plaintiff. *Id*.

On February 18, 2011, Alpena Collision also made its required monthly payment to Plaintiff. Alpena Collision's Answers to Pl.'s Requests for Admissions ¶ 2. It would be the last payment Alpena Collision would make. *Id*.

**E**

Alpena Collision did not make its monthly payment in March, April, or May 2011. So on June 6, 2011 Plaintiff mailed Alpena Collision a notice of forfeiture. *See* Pl.'s Mot Ex. B.

Alpena Collision did not remedy the situation. *See* Pl.'s Compl., *attached as* United States' Notice of Removal Ex. B.

June, July, and August 2011 passed. *Id*. Still Alpena Collision did not service its debt. *Id*. So in September 2011 Plaintiff filed a complaint for possession after land contract forfeiture in the Alpena County District Court. *Id*. The complaint asserts that the principal amount due is $46,683.26 and the total amount in arrears is $15,972 (as of September 2011). *Id*. The complaint also names as defendants the IRS and the Michigan Department of Treasury, both of which have recorded tax liens on the property. *Id*.

In October 2011, the United States removed the case to this Court. Plaintiff now moves for summary judgment. As does the United States.[2]

## II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

---

[2] The Michigan Department of Treasury, has not entered an appearance in this case.

**III**

Briefly, it is undisputed that Alpena Collision has not made any payments under the land contract since February 2011.  *E.g.*, Alpena Collision's Answers to Pl.'s Requests for Admissions ¶ 2.  That is, for about two years Alpena Collision has been in default.

Likewise, it is undisputed that Alpena Collision has not fully paid its federal income taxes.  *E.g.*, Alpena Collision's Resp. Br. 2.  And the United States has recorded tax liens against the property conveyed under the land contract.  *E.g.*, Pl.'s Mot. for Summ. J. Ex. C (attaching summary of tax liens).

Thus, it is undisputed that Alpena Collision owes both Plaintiff and the United States. The principal question is what remedies, if any, they are entitled to use to collect on the debt.  An ancillary question is whether Plaintiff is entitled to its attorney fees.  Each question is addressed in turn.

**A**

When a land contract vendee defaults on its obligations, as in this case, "the vendor may have a number of available remedies."  1 John G. Cameron, Jr., *Michigan Real Property Law* § 16.12 (ICLE 2005).  As between the vendor and the vendee, the remedies are simply a question of contract law:

> When a default occurs, the vendor should look first to the land contract to determine what remedies it provides.  Generally, a well-drafted land contract will grant the vendor at least three remedies the vendor may pursue if the vendee defaults: (1) specific performance of the land contract, (2) forfeiture of the land contract, and (3) acceleration of the debt, foreclosure on and sale of the property that is the subject of the land contract to satisfy the debt, and a deficiency judgment against the vendee for the amount of any portion of the debt not satisfied at the foreclosure sale.

*Id.*  Here, the land contract gives Plaintiff the second and third remedies (forfeiture and foreclosure) against Alpena Collision.

Plaintiff writes that it would prefer the former, but is also content with the latter. *E.g.*, Pl.'s Resp. to United States' Mot. Summ. J. 1 ("Plaintiff does not object to the United States' request that a sale be ordered of the subject properties. Plaintiff does object, however, to the request by the United States that the Court also refrain from providing Plaintiff with the forfeiture judgment it seeks.").

Because Plaintiff is suing the United States, however, the forfeiture remedy is unavailable. To understand why, an examination of the doctrine of sovereign immunity is necessary.

**1**

"It is axiomatic," the Supreme Court instructs, "that the United States may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). As noted, "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lewis v. Hunt*, 492 F.3d 565, 570 (5th Cir. 2007) (ellipsis omitted) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

For actions affecting property on which the United States has a lien, 28 U.S.C. § 2410(a) enumerates five specific causes of action to which the United States consents to suit. *See Lewis*, 492 F.3d at 570 (discussing history of § 2410 and its statutory predecessors). That section provides that

> the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter —
>
> (1) to quiet title to,
>
> (2) to foreclose a mortgage or other lien upon,
>
> (3) to partition,
>
> (4) to condemn, or

(5) of interpleader or in the nature of interpleader.

28 U.S.C. § 2410(a)(1)–(5). Land contract forfeitures are not expressly referenced in § 2410. Simply put, the United States has not expressly consented to such suits. And this Court lacks the authority to infer such consent. *Lane*, 518 U.S. at 192. Consequently, for Plaintiff to proceed against the United States, Plaintiff must seek foreclosure.

The specific type of foreclosure, moreover, is specified by the United States Code, which provides that "an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale." § 2410(c); *see generally United States v. Perpetual Help's Boys Home*, 451 F. Supp. 270, 273 (E.D. Wis. 1978) ("Since the plaintiff has not sought judicial sale, her action is barred against the United States."). Thus, Plaintiff's only available remedy against the United States is foreclosure via judicial sale. Because Plaintiff named the United States as a defendant in this case, Plaintiff is not entitled to seek a forfeiture.

**2**

Arguing against this conclusion, Plaintiff asserts that the United States has in fact consented to forfeiture suits because these suits are indistinguishable quiet title actions. *See* Pl.'s Reply Br. 2. "While such a label typically is not used in land contract forfeiture proceedings," Plaintiff writes, "by definition Plaintiff's forfeiture action is a 'quiet title action' as against the United States." *Id*.

Plaintiff cites neither case law nor statute supporting its proposition. An independent review reveals none. On the contrary, such a review shows that a forfeiture action is not a quiet title action. A forfeiture action seeks to extinguish a valid lien, while a quiet title action challenges the lien's validity.

To elaborate, in a forfeiture action a plaintiff seeks "possession of the property as full satisfaction for the debt . . . . At the conclusion of a summary proceeding for possession after forfeiture, the seller recovers possession of the land, and the contract is effectively rescinded." *Mazur v. Young*, 507 F.3d 1013, 1020 (6th Cir. 2007) (applying Michigan law); *see generally* Cameron, *supra*, § 16.15 ("When a land contract is forfeited, the contract is declared to be terminated, all consideration paid remains with the vendor, and legal and equitable title to the property merge in the vendor."). Because the contract is rescinded, any liens in the property are extinguished. *See Vereyken v. Annie's Place, Inc.*, 964 F.2d 593, 594–95 (6th Cir. 1992) (same).

In a quiet title action, in contrast, "a plaintiff seeks a decree that some allegedly adverse interest in his property is actually defective, invalid or ineffective prior to and at the time suit is brought either because the lien was invalidly created, or has become invalid or has been satisfied." *Kasdon v. G. W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995 (D. Md. 1982), *aff'd sub nom. Kasdon v. United States*, 707 F.2d 820 (4th Cir. 1983).

Finally, in a foreclosure action a plaintiff seeks "a court decree divesting a valid but junior lien upon property in which the plaintiff has a senior interest. Priorities among valid interests are the subject of foreclosure suits; the alleged invalidity of adverse interests are the subjects of quiet title actions." *Id*.; *see generally* Cameron, *supra*, § 16.19.

Here, Plaintiff does not dispute the validity of the United States' liens. Plaintiff is not seeking to quiet its title, but to have Alpena Collision forfeit its equitable title and, by extension, have the United States forfeit its lien. Section 2410 does not authorize this type of suit.

Reinforcing this conclusion is the history of § 2410. When the statute was originally enacted in 1931, quiet title actions were not included among the actions that the United States consented to. Rather, the statute "had initially given consent of the United States only in any

action 'for the foreclosure of a mortgage or other lien upon real estate.' The words 'to quiet title to' were added in 1942." *Falik v. United States*, 343 F.2d 38, 41 (2d Cir. 1965) (Friendly, J.) (ellipsis omitted). Explaining why, Judge Friendly recounts that "[t]he addition resulted from a request of Attorney General, later Mr. Justice, Jackson." *Id*. That gentleman informed Congress:

> In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances, mortgagees have foreclosed on property and have failed to join the United States. It appears that justice and fair dealing would require that a method be provided to clear real-estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase "to quiet title."

*Id*. at 41 n.4 (citation omitted) (quoting H.R. Rep. No. 1191, 77th Cong., 1st Sess. 2 (1941); S. Rep. No. 1646, 77th Cong., 2d Sess. 2 (1942)). Congress agreed, and so consented to quiet title suits against the United States — that is, suits to "clear real-estate titles of questionable or valueless Government liens." *Id*.

Here, as noted, Plaintiff does not question the validity of the United States' lien. *See* Pl.'s Resp. to United States' Mot. 1. Rather, Plaintiff is simply seeking to have Alpena Collision's equitable title forfeited and the United States' lien extinguished.

That is, Plaintiff is seeking a land contract forfeiture.[3] Because the United States has not consented to that type of suit, Plaintiff's remedy is limited to the type of suit that the United States has consented to —foreclosure via judicial sale.

**3**

---

[3] As an aside, it should be noted that if Congress had wanted to consent to suits concerning the forfeiture of a land sales contract, it knew how to. Section 7425(b) of Title 26, for example, provides that "a sale of property on which the United States has or claims a lien" will discharge the lien only if the United States is given proper notice of the sale. 26 U.S.C. § 7425(b)(1). "For purposes of subsection (b)," the statute continues, "a sale of property includes any forfeiture of a land sales contract." § 7425(c)(4). Thus, Congress was aware of land sales contract forfeiture actions, but did not include them within § 2410. See generally *Lewis v. Hunt*, 492 F.3d 565, 572 (5th Cir. 2007) (discussing interplay between §§ 7424 (and by extension, 7425) and 2410).

Alpena Collision, unsurprisingly, would prefer not to be foreclosed upon. And so, while it acknowledges that it has not paid Plaintiff since February 2011, it nevertheless contends neither Plaintiff nor the United States are entitled to summary judgment.

**a**

First, Alpena Collision disputes "the amount due and owing under the land contract. The purchase price under the land contract was $150,000. [Alpena Collision] made a down payment of $21,000 which should have left a principal balance of $129,000. Instead, the land contract indicated that the principal balance was a $132,604.48 a clear mathematical error." Alpena Collision's Resp. to Pl.'s Mot. 2.

What Alpena Collision overlooks is that the purchase price was not simply $150,000, but also $3,604.48 in "other amounts financed." Land Contract ¶ (1)(b); *see* Browning Aff. ¶ 2. That is, the purchase price was $153,604.48. Because Alpena Collision put $21,000 down, the balance due was $132,604.48. The principal balance contained in the land contract is correct.

**b**

Next, Alpena Collision contends that after it paid $90,300 in February 2011 to reduce its monthly payments, Plaintiff did not honor the modification. Alpena Collision argues that "had Plaintiff honored [its] agreement to modify in the beginning, no default would have existed and the hardship that has been created for the Defendant would not exist today." Alpena Collision's Resp. to Pl.'s Mot. 4.

Alpena Collision does not, however, contend that it has met its obligations under either the land contract as originally drafted or as amended in February 2011. On the contrary, the undisputed evidence is that Alpena Collision has been in default of its obligations for nearly two years. And disputing the amount of arrearages does not excuse Alpena Collision's default.

*State-William P'ship v. Gale*, 425 N.W.2d 756, 760 (Mich. Ct. App. 1988) ("[A] bona fide dispute over the amount owed under the contract or for other damages may justify a court in using its equitable powers to relieve the purchaser from an unreasonable forfeiture, it does not prevent a finding of default.").

As noted, the land contract provides: "If default is made by the Purchaser and such default continues for a period of forty-five days or more, and the Seller desires to foreclose this contract in equity, then the Seller shall have at his option." Land Contract ¶ (3)(g). As the undisputed evidence is that Alpena Collision has been in default for more than 45 days, Plaintiff is entitled to exercise its option to foreclose on the properties.

**c**

Third, and similarly, Alpena Collision asserts that the forfeiture notice "which initiated this process was defective and improper. The notice indicated a balance due of $6,445.20 which should have been $3,972.81." Alpena Collision's Resp. to Pl.'s Mot. 3. But disputing the amount of arrearages does not excuse its default. Drawing all reasonable inferences in Alpena Collision's favor, it has not offered any justification for denying Plaintiff's action for foreclosure.

**d**

Finally, Alpena Collision asserts that the United States is not entitled to summary judgment because "the documents attached by the United States are outside of the pleadings, [and] while at trial they may be afforded the presumption of regularity and the establishment of a prima facie case, Alpena Collision Services, Inc. still maintains the ability to challenge the accuracy of the documents at trial." Alpena Collision's Resp. to United States' Mot. for Summ. J. 2. Alpena Collision misapprehends the federal summary judgment standard.

The Supreme Court instructs that the party moving for summary judgment has the initial burden of producing evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Materials that may be relied on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). That is, to carry its burden the party is not limited to the pleadings.

The burden then shifts to the opposing party, who must demonstrate the presence of such an issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). Significantly, however, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (quotation marks and ellipsis omitted) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

Here, the United States carries its initial burden, offering the declaration of an agent who has reviewed Alpena Collision's tax records, as well as certificates of assessments documenting the underpayments from 2001 through 2010. United States Mot. for Summ. J. Exs. 1–12. Alpena Collision, in contrast, does not carry its burden of demonstrating a genuine issue of material fact — rather, it requests that a decision be deferred so that it may "challenge the accuracy of the documents at trial." Alpena Collision's Resp. to United States' Mot. for Summ. J. 2. Contrary to Alpena Collision's assertion, because it has not set forth specific facts showing a genuine issue for trial, it is has not preserved "the ability to challenge the accuracy of the documents at trial." Alpena Collision's Resp. to United States' Mot. for Summ. J. 2. That is,

because Alpena Collision has not established a genuine issue of material fact regarding the United States' lien, it is not entitled to a trial on the issue.

## B

The land contract, as noted, contains a curiously worded attorney fee provision that provides: "The Purchaser agrees to pay all costs and fees incurred by the Bank to protect the Bank's interest, including but not limited to actual attorney fees and all costs of litigation concerning this contract." Land Contract ¶ (3)(m).

Based on this provision, Plaintiff seeks $3,166.21, which includes $2,7100 in attorney fees and $456.21 in costs. In support of its request, Plaintiff attaches a line item invoice enumerating the specific work done, hours spent, and rates charged. Pl.'s Mot. Summ. J. Ex. J.

"As a general rule," the Michigan Court of Appeals observes, "attorney fees are not recoverable as an element of costs or damages absent an express legal exception. . . . . An exception exists where attorney fees are provided by contract of the parties." *Fleet Bus.Credit, LLC v. Krapohl Ford Lincoln Mercury Co.*, 735 N.W.2d 644, 647 (Mich. Ct. App. 2007) (quotation marks omitted) (quoting *Grace v. Grace*, 655 N.W.2d 595 (Mich. Ct. App. 2002)).

Here, the land contract provides that "the bank" is entitled to its attorney fees. This appears to be a scrivener's error — Plaintiff is identified in the contract as the "seller," not the bank. As the lender, however, Plaintiff did play a de facto role of the bank on the land contract. And Alpena Collision does not dispute that the provision applies to Plaintiff. Instead, Alpena Collision argues that "this Court should not award attorney fees in this matter since there has been [no] itemization of the attorney fees [and] no copies of the invoices were attached." Alpena Collision's Resp. to Pl.'s Mot. for Summ. J. 5. Contrary to Alpena Collision's contention, an

itemized invoice of Plaintiff's attorney fees was attached to the motion. Pl.'s Mot. Summ. J. Ex. J. Plaintiff is entitled to its fees and costs.

### IV

Accordingly, it is **ORDERED** that the United States' motion for summary judgment (ECF No. 23) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART**.

It is **DECLARED** that Alpena Collision is in default on the land contract.

It is **ORDERED** that Plaintiff is directed to file a supplemental brief by Friday, January 11, 2013, specifying the current amount of the deficiency (including interest) and outstanding balance under the land contract. The brief must be supported by three exhibits: (1) an affidavit attesting to these amounts; (2) an affidavit and itemized list specifying the amount of attorney fees and costs incurred to date; and (2) a draft foreclosure judgment.

Dated: December 27, 2012

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 27, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---